**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DARRYL ALLMOND and JANE G. CHARLES,

    Plaintiffs,

vs.                                                       CASE NO.  3:04-cv-1079-J-32TEM

STATE OF FLORIDA DEPARTMENT
OF CHILDREN AND FAMILIES, et al.,

    Defendants.

_____

## **REPORT AND RECOMMENDATION**[1]

This cause is before the Court on the Defendants' Motion to Dismiss Amended Complaint (Doc. #19, Motion), filed January 18, 2005 by Defendants James L. Bennett, Jr., Albert Parker, Sally Tucker, and Joanne Giglia.  Plaintiffs' response in opposition (Doc. # 26) was filed January 27, 2005.  Defendants maintain that even if all the allegations in Plaintiffs' Amended Complaint (Doc. #13) are taken as true, they fail to state any claim upon which relief can be granted as to the named defendants.  The Court agrees.

*BACKGROUND*

The Plaintiffs' amended complaint alleges that the Defendants violated Plaintiffs' civil and constitutional rights and caused "serious mental and physical pain and an unwarranted hardship" by denying or defrauding Plaintiffs of food stamps valued over four hundred dollars.  *See* Doc. # 13, p. 2 ¶ 1.  Plaintiffs' amended complaint asserts claims under the

---

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking the factual findings on appeal.

following: 1) 42 U.S.C. § 1983; 2) the Racketeer Influenced and Corrupt Organizations Act; 3) Due Process and Equal Protection under the Fifth and Fourteenth Amendments; 4) the Eighth Amendment and the Fourth Amendment of the Constitution; 5) the International Covenant on Civil and Political Rights; 6) the Convention on the Prevention and Punishment of the Crime of Genocide; and 7) the "Customary International Law of Human Rights."

The allegations in Plaintiffs' amended complaint can be summarized as follows.  On August 27, 2004, Plaintiff Jane Charles applied to the State of Florida Department of Children and Families (DCF) for food stamps for herself and her two children, Rawl and Hermi Charles.  Apparently, a delay occurred in the approval of the application and the disbursement of the food stamps possibly due to a series of administrative errors on the part of DCF involving the incorrect recording of the information that Plaintiff Charles supplied on her application, i.e. the wrong apartment number, a typo to her social security number, and misspelling of her children's names.

Plaintiff Jane Charles filed a subsequent application for food stamps on September 23, 2004 which included her husband, Plaintiff Darryl Allmond.  DCF approved that application on September 24, 2004 and determined that they were eligible for food stamps from November 1, 2004 to January 31, 2005 in the amount of $257 per month.  Doc. #13, Exhibit E.

Plaintiffs assert in the amended complaint that they did not receive food stamps for the approximately one month period from August 27, 2004 through September 30, 2004.[2]

---

[2] Plaintiffs do not specifically assert that Ms. Charles' initial application in August, 2004 was approved; however, it appears that it was from the letter to Ms. Charles from DCF dated October 19, 2004 (Doc. #13, Exhibit L), acknowledging clerical errors which delayed the August and September, 2004 food stamps.  Also, a DCF-generated

Doc. #13 at 7 (stating that DCF maintained that it posted the food stamps, but that Plaintiffs never received them).  Plaintiffs claim that since they did not have food stamps for that time period they had to use their rent money for food and their rent was therefore late, "creat[ing] a hardship on [their] condition of life."  Doc. #13, p. 8, ¶ 4.  However, in Plaintiffs' Reply in Opposition to Defendant' Motion to Dismiss, they state that they did receive food stamps in the amount of $49 in August 2004 and $371 in September 2004, Doc. #26 at 15, which is in accord with DCF's recorded payment history.  *See supra* note 2.  Based on these conflicting assertions it is unclear to the Court whether the Plaintiffs' assert that they are still owed food stamps for that period, or whether their complaint goes to the delay in receiving such benefits.

Additionally, Plaintiffs set forth their receipt of food stamps, including for the entire period of established eligibility under the September application, as follows: August, $49; September, $371; October, $257; November, $257; December, $499; January, $257.[3]  Doc. # 26 at 15.  Since the Plaintiffs have established entitlement only for the period of November

---

payment history submitted by Plaintiffs (Doc. #5, Exhibit H), which is not now before the Court, shows payment of $49 for August 2004 and $371 for September 2004.  However, the amount to which Ms. Charles may have been entitled for that period is not documented.

[3] A letter to Ms. Charles from DCF dated November 24, 2004, states that DCF reviewed Plaintiffs' eligibility and determined that the food stamp benefits would be reduced from $499 to $257 as of January 1, 2005 due to a change in supplemental security income (SSI).  Doc. #26, Exhibit Z.  Based on all other allegations and exhibits supplied by the Plaintiffs it is unclear to the Court that the Plaintiffs were entitled to more than $257 in monthly food stamp benefits during that period.

through January at a rate of $257 per month, it is unclear to the Court what Plaintiffs claim they are entitled to but did not receive.[4]

Plaintiffs further allege, although not in the complaint itself, that before Mr. Allmond was included on his wife's application for food stamps, his own independent application for food stamps was improperly denied. *See* Plaintiff's (sic) Reply in Opposition to Defendants (sic) Motion to Dismiss, Doc. #26, p.2, ¶ 1. Plaintiffs allege that in denying that application Defendants violated DCF's policies of granting emergency food stamps within seven (7) days because Mr. Allmond had no money or food and had moved from Virginia to Florida a few days prior. *Id.*

Plaintiffs assert that all of the actions taken by the Defendants were motivated by racial or ethnic discrimination. However, the Plaintiffs fail to state any facts that would support even an inference of a discriminatory motive on the part of the Defendants.[5]

Plaintiffs assert that since they did not receive food stamps in a timely fashion they have suffered and will continue to suffer irreparable injury as a result. Plaintiffs brought this

---

[4] The Court does not have before it any evidence of entitlement to benefits for any period beyond January 31, 2005. Plaintiffs, in their Motion Pursuant to Fed. R. Civ. P. 37 (Doc. # 32), which was a motion for sanctions, requested leave to attach an affidavit of Darryl Allmond alleging that for the month of February 2005, the food stamps were not posted to Plaintiffs' account until February 15, and then at a reduced amount. The Court notes that motion for sanctions was denied. *See* Doc. #37.

[5] Plaintiffs state that Defendants "directed discrimination against Mr. Allmond because he has dread lock hair and indian (sic) skin and for being from another state." Doc. #13, p. 8, ¶5. Also, Plaintiffs assert that Plaintiff Jane Charles and her two sons have a green card and passport but are from the state of Saint Lucia, West Indies Group and the defendants discriminated against them in the form of "bad treatment" and discriminated against Plaintiff Allmond by denial of food stamps. Doc. #26, p. 7. However, Plaintiffs assert no facts as to Defendants' actions that support this conclusion.

action against Defendants, who are employees of DCF, in their individual and official capacities, for declaratory and injunctive relief, compensatory damages of $250,000, punitive damages, and costs.

*DISCUSSION*

**Standard for Motion to Dismiss**

A motion to dismiss will be denied unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). The allegations in the complaint must be taken as true for purposes of the motion to dismiss. *Id.* Where the plaintiff is proceeding *pro se*, the court should construe the complaint more liberally than it would otherwise. *Id.* (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). However, the leniency generally granted to *pro se* litigants does not give a court license to serve as *de facto* counsel for the party, or to rewrite a deficient pleading in order to sustain an action. *GJR Inv., Inc. V. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998). Furthermore, "conclusory allegations and unwarranted deductions of fact are not accepted as true." *Gersten v. Rundle*, 833 F.Supp. 906, 910 (S.D.Fla.1993) (citing *Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir.1974)).[6]

In the present case, the undersigned finds that even a liberal reading of the amended complaint does not support a viable cause of action in federal court.[7]

---

[6] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[7] Although not required, the Court's liberal reading of the amended complaint included consideration of allegations set forth in Plaintiff's (sic) Reply in Opposition to

**Plaintiffs' Claims Against Defendants in Their *Official* Capacities**

Under the Eleventh Amendment,[8] a state and its agencies are immune from suits brought in federal courts by private parties, unless the state has consented to such a suit, or there has been a legitimate abrogation of immunity by Congress. *Sanders v. Jefferson County Dept. Of Human Resources*, 117 F. Supp.2d 1199, 1204 (N.D. Ala. 1999), *Aff'd in Part by Sanders v. Jefferson County Dept. of Human Resources*, 235 F.3d 1345 (11th Cir. 2000). A state's waiver of its sovereign immunity must be "unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Furthermore, 42 U.S.C. § 1983 does not override the states' Eleventh Amendment immunity. *Id.* (citing the holding from *Quern v. Jordan*, 440 U.S. 332, 342 (1979)). This immunity includes a federal suit on the basis of state law when the relief sought and ordered has an impact directly on the State itself. *Doe v. Moore*, No. 04-10279, 2005 WL 1324592, at *10 (11th Cir. June 6, 2005) (citing *Halderman*, 465 U.S. at 117).

Eleventh Amendment immunity extends to officials of the state and its agencies, when sued in their official capacities for monetary relief. *Sanders*, 117 F. Supp.2d at 1204 (citing *Edelman v. Jordan*, 415 U.S. 651 (1974), in holding food stamp participant's civil rights suit against government officials acting in their official capacities was barred by

---

Defendants (sic) Motion to Dismiss (Doc. #26), wherein Plaintiffs requested leave to add to their amended complaint the allegations set forth therein. *See* Doc. #26 at 16. The Court need not construe and grant that request as a motion to amend the complaint, as the Court finds that even if the Court allowed amendment the Plaintiffs fail to set forth sufficient facts to establish a claim upon which relief can be granted.

[8] "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state." U.S.Const. amend. XI.

Eleventh Amendment)*; see also Williams v. Bennett*, 689 F.2d 1370, 1376-77 (11th Cir. 1982) (also citing *Edelman*, 415 U.S. at 664, in stating that "[t]he amendment effectively bars such actions for monetary relief even when the state is not named as a party. If the judgment necessarily will be paid from the state treasury, and the state is the real party in interest, then the state may invoke its sovereign immunity").  However, the Eleventh Amendment does not bar a citizen from seeking injunctive or declaratory relief against a state official "to conform [his] future conduct to the requirements of federal law." *Brunken v. Lance*, 807 F.2d 1325, 1329 (7th Cir.1986) (citing *Quern*, 440 U.S. at 332).

In the present case, the Plaintiffs do not contend that the State of Florida has consented to this suit, nor do they contend that there has been a congressional abrogation of immunity.  As discussed *supra*, without such consent or abrogation of immunity the suit must be dismissed as to all claims for monetary relief against the named Defendants for all of Plaintiffs' claims against them in their official capacities.

As for the claims against the named Defendants for declaratory and injunctive relief, the amended complaint is almost devoid of facts,[9] and contains mere conclusions as to Defendants' motives and actions, and even as to Plaintiffs' injuries.[10]  Notably, the

---

[9] Even among the meager facts that are alleged, the undersigned finds internal inconsistencies.  For example, in describing their physical pain the Plaintiffs state that the body feels pain when there is no food inside, Doc. # 26, p.6; however, the Plaintiffs alleged that their mental and emotional distress was caused by the fact that they could not pay their rent on account of using the money to buy food.  Doc. # 13, p.8, ¶ 4.

[10] Plaintiffs make a claim under § 1983 alleging discrimination on account of ethnicity or nationality.  As in *Sanders*, where a food stamp participant's § 1983 claim alleged discrimination on account of religion, "Plaintiff[s] ha[ve] failed to do more than assert conclusory allegations against all Defendants...This lack of specificity makes it impossible for the [C]ourt to determine whether [they] [state] a claim for which relief can be granted under § 1983." 117 F. Supp.2d at 1202-03,1208 (dismissing with prejudice

application for food stamps for the family was not denied but, rather, was approved within a month of the initial application. It is entirely unclear how, at the time the amended complaint was filed, the Plaintiffs "[had] suffered and will continue to suffer irreparable injury." Doc. #13, p.9 (Demand for Relief). Furthermore, it is unclear to the Court what declaratory or injunctive relief the Plaintiffs are seeking. The facts alleged by Plaintiffs against Defendants in their official capacities are simply insufficient to state a valid claim upon which declaratory or injunctive relief may be granted. Thus, the undersigned recommends that Defendants' motion to dismiss be **granted** as to all claims against Defendants in their official capacities.

**Plaintiffs' Claims Against Defendants in Their *Individual* Capacities**

*Plaintiffs' Allegations of Violations of Constitutional and Federal Statutory Rights*

The Plaintiffs' amended complaint alleges a cause of action under title 42 U.S.C. § 1983 for violations by Defendants of Plaintiffs' constitutional rights secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments. The Defendants argue that they are entitled to qualified immunity from Plaintiffs' claims of violations of federal statutory and constitutional rights because the facts show that Defendants were acting within their discretionary authority at all times relevant to the allegations made by Plaintiffs. Doc. #19 at 10.

The qualified immunity doctrine exists to provide a balance between the need to protect the rights of citizens and the need for government officials to freely carry out their functions without the threat of frivolous litigation. *See GJR Inv.*, 132 F.3d at 1366. Qualified immunity is available to public officials who are performing discretionary functions within the

---

where the plaintiff, who practiced Judaism, questioned the fairness and impartiality of Christian defendants in handling his food stamp claim).

scope of their authority, and who do not violate "'clearly established federal statutory or constitutional rights of which a reasonable person would have known.'" *Id. (quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, the defense protects government agents "unless [their] actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *Id.; see also Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1031 (11th Cir. 2001) (holding that the applicable law is clearly established if "the preexisting law dictates, that is, truly compels, the conclusion for all reasonable, similarly situated public officials that what [d]efendant[s] [were] doing violated [p]laintiffs' federal rights in the circumstances") (citation and internal quotation marks omitted)).

A discretionary function, in the qualified immunity context, has been interpreted in the Eleventh Circuit to include actions that do not necessarily involve an element of choice. *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (holding that qualified immunity protects a government official whose actions may be ministerial so long as the official's actions "(1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority'") (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir.1988)). The court in *Adams v. Franklin*, 111 F.Supp.2d 1255 (M.D.Ala. 2000), emphasizes the Eleventh Circuit's broad interpretation of discretionary authority as follows:

> In determining whether a defendant acted within the scope of his or her discretionary authority, the test is not whether the government official acted lawfully. Rather, the court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of the government official's discretionary duties. *See Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir.1992).

*Adams*, 111 F.Supp.2d at 1266; *see also Griswold v. Ala.Dep't of Industrial Relations*, 903 F.Supp. 1492, 1498 (M.D.Ala.1995) (emphasizing the "level of generality" applied by the Eleventh Circuit in determining whether the actions of a government official are within his or her discretionary authority by analyzing the framing of the inquiry in *Rich*, *Jordan*, and *Sweatt v. Bailey*, 876 F.Supp. 1571 (M.D. Ala. 1995)).

Under the doctrine of qualified immunity, government officials are immune from not only liability, but also from *suit*. *GJR Inv.*, 132 F.3d at 1366 (emphasis in original); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (stating that qualified immunity is an entitlement not to stand trial or face the other burdens of litigation). Accordingly, issues of qualified immunity must be resolved at the earliest possible stage of litigation. *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). In a Rule 12(b)(6) motion to dismiss, defendants are entitled to qualified immunity if the complaint fails to allege facts that would show a violation of a clearly established constitutional or federal statutory right. *Kyle K. v. Chapman*, 208 F.3d 940, 942 (11th Cir. 2000). Although Fed. R. Civ. P. 8 provides Plaintiffs much flexibility in framing a complaint, it is noted that this circuit continues to mandate a "heightened pleading requirement," necessitating some factual detail in the pleadings as to § 1983 claims, most importantly where a case involves qualified immunity, in order to "weed out nonmeritorious claims." *GJR Inv.,* 132 F.3d at 1367. "A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Gonzalez,* 325 F.3d at 1235 (quoting *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir.1984)).

The Court has carefully proceeded in evaluating Plaintiffs' amended complaint by considering both the leniency owed to Plaintiffs as *pro se* litigants and the circuit's heightened

pleading requirements based on qualified immunity. First, the Court agrees with Defendants that they were acting within their discretionary authority at all times relevant to the allegations in the amended complaint. According to *Adams*, the proper inquiry in this regard is not whether Defendants improperly processed or denied Plaintiffs food stamp applications, but, rather more generally, whether Defendants' duties encompassed the processing of food stamp applications, including making determinations of eligibility. This question must be answered in the affirmative. The Defendants' duties were to administer the food stamp program and this includes processing applications and determining eligibility. The Defendants were carrying out these duties when they made the clerical errors with respect to Ms. Charles' application and denied Mr. Allmond's application; thus, their actions were certainly within the outer perimeter of their discretionary duties. Whether or not these functions were carried out in a reasonable manner is irrelevant to the question of whether the Defendants were acting within their discretionary authority. Since the Court finds that Defendants were acting within their discretionary authority, the qualified immunity that protects Defendants may only be overcome by a showing that Defendants violated clearly established federal statutory or constitutional rights, which the Court now reviews.

The Court concludes that Plaintiffs' amended complaint fails to state a valid claim as to violations of any federal statutory or constitutional rights. It is apparent that mistakes were made with respect to correctly obtaining Plaintiffs' personal information, and such mistakes may have caused the unfortunate delay in Plaintiffs' receipt of food stamps. However, there are no facts alleged in the amended complaint (or in Plaintiffs' Reply in Opposition to Defendants' Motion to Dismiss, Doc. #26) as to Defendants' actions that would support Plaintiffs' conclusions that the Defendants unlawfully discriminated against them. Plaintiffs

supply no facts that would indicate they were treated differently from similarly situated persons or that Defendants unequally applied the DCF procedures for the purpose of discriminating against Plaintiffs. Here, as in *GJR*, Plaintiffs' allegations are deficient in that the Plaintiffs "us[ed] many broad pejorative words to describe the defendants' intentions without giving any specifics." *GJR Inv.*, 132 F.3d at 1368.[11]

With respect to Plaintiffs' due process claim, the Court notes that food stamp benefits are a matter of statutory entitlement and as such are treated as a protected property interest for the purposes of a due process claim. *Sanders*, 117 F.Supp.2d at 1207. However, Plaintiffs do not allege that they pursued or were denied any administrative remedies (i.e. hearing, etc.) subsequent to the denial of Mr. Allmond's individual application for food stamps or the delay in the distribution of food stamps to the family as a whole. Accordingly, these events simply cannot be construed as a denial of due process.

For the reasons stated above, the undersigned recommends that Defendants' motion to dismiss be **granted** as to all claims against Defendants in their individual capacities for alleged violations of constitutional and federal statutory rights. Plaintiffs have failed to allege facts sufficient to establish entitlement to relief based upon a violation of a clearly established constitutional or federal statutory right that would overcome the defense of qualified immunity.

*Plaintiffs' Allegations of Civil RICO Violations*

The Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it unlawful " to conduct or participate, directly or indirectly, in the conduct of [an] enterprise [that affects interstate commerce] through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

---

[11] *See also supra* note 9.

Racketeering activity includes conduct that is chargeable or indictable and offenses that are punishable under the predicate statutes of section 1961. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 472 U.S. 479, 486-88 (1985). In establishing a pattern of racketeering activity, the plaintiff must allege at least two related racketeering predicate acts that "amount to, or pose a threat of, continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 237, 239 (1989). The *H.J.* Court held that the continuity requirement could be met either by showing a closed period of related conduct over substantial period of time, or by showing past conduct that by its nature projects into the future with a threat of repetition. *Id.* at 241-42. Therefore, to survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts and must meet the continuity requirement. The Court agrees with Defendants that Plaintiffs have failed to meet this burden. They have not alleged *any* predicate acts, much less defined any time line for such acts. Accordingly, the undersigned recommends that the Defendants' motion to dismiss as to the Plaintiffs' RICO claim be **granted**.

*Plaintiffs' Tort Claims*

Although no tort claim is specifically named in Plaintiffs' amended complaint, a tort claim is suggested by Plaintiffs' general allegations of Defendants' negligence and allegations that Defendants "cause[d] serious mental and physical pain" to Plaintiffs. Doc. # 13, p.8, ¶¶ 4, 8. Defendants, in their individual capacities, claim sovereign immunity pursuant to Florida's Sovereign Immunity Statute which states:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner

>exhibiting wanton and willful disregard of human rights, safety, or property...[t]he exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity...

§ 768.28(9)(a), Fla. Stat. (2002).

Thus, as Defendants correctly point out, in order for Plaintiffs to name an officer or employee of the state as a party defendant for action undertaken in the scope of employment, the Plaintiffs must plead that the actions were undertaken with malicious purpose or in bad faith or in a manner exhibiting wanton and willful disregard of human rights. *Searer v. Wells*, 837 F.Supp. 1198, 1201 (M.D.Fla. 1993).

The undersigned finds that the Plaintiffs' amended complaint contains bare conclusions that Defendants' actions were motivated by a malicious purpose or were in bad faith or in a manner exhibiting wanton and willful disregard of human rights. The Plaintiffs have not alleged any facts indicatying the motives of the Defendants as required to overcome the defense of sovereign immunity according to the Florida statute. As such, the undersigned  recommends that the Defendants' motion to dismiss be **granted** as to the Plaintiffs' apparent assertion of state tort claims.

*Plaintiffs' Allegations of Violations of International Law*

Plaintiffs allege that Defendants have violated the International Covenant on Civil and Political Rights, the Customary International Law of Human Rights, and the Convention on the Prevention and Punishment of the Crime of Genocide.[12]

---

[12] The Plaintiffs further allege violations of the Convention Against Torture and Other Cruel Inhuman Degrading Treatment or Punishment ("CAT") in their Reply in Opposition to Defendants (sic) Motion to Dismiss, Doc # 26, although this allegation does not appear in the amended complaint. The Court notes, however, that when

14

Not all international treaties give rise to an individual cause of action. It has already been determined that individual plaintiffs do not have standing to raise claims under the United Nations Charter, the International Covenant on Civil and Political Rights, or the Universal Declaration of Human Rights. *Dickens v. Lewis*, 750 F.2d 1251, 1254 (5th Cir. 1984) (citing *Diggs v. Richardson*, 555 F.2d 848, 850 (D.C. Cir. 1976)).

The language of the Customary International Law of Human Rights that Plaintiffs cite in their amended complaint is actually from section 702 of the Restatement (Third) of Foreign Relations Law of the United States (1987) and is not a treaty, declaration, or legislation of the United States. Its provisions are identical to the Universal Declaration of Human Rights, which is a declaration and not a treaty at all. As previously indicated, individual plaintiffs do not have standing to raise claims under the Declaration. *Dickens*, 750 F.2d at 1254.

As to the allegations of violations of the Convention on the Prevention and Punishment of the Crime of Genocide, it is noted that when Congress passed the Genocide Convention Implementation Act of 1987, 18 U.S.C. § 1091 (1988), it provided that the Act "shall not "be construed as creating any substantive or procedural right enforceable by law by any party in any proceeding." *Id.* at § 1092. Although this Act did not create a new private remedy, it has been held that there was no legislative intent to repeal the private remedy that already existed under the Alien Tort Act. *Kadic v. Karadzic*, 70 F.3d 232, 242 (2d Cir. 1995). However, Plaintiffs here do not raise any claims under the Alien Tort Act, nor is it clear that

---

Congress implemented CAT via the Foreign Affairs Reform and Restructuring Act of 1988 ("FARRA") it expressly stated that FARRA does not provide courts with jurisdiction to review CAT claims except as part of the review of a final removal order pursuant to the Immigration and Nationality Act. *Cadet v. Bulger*, 377 F.3d 1173, 1181 (11th Cir. 2004). Therefore, even had Plaintiffs properly pled the claim as part of their amended complaint, it would fail.

the Plaintiffs would have standing to do so at any rate.  As such, the undersigned need not reach the merits of whether or not acts of genocide actually occurred.[13]  For the foregoing reasons, the undersigned recommends that the Defendants' motion to dismiss be **granted** as to the Plaintiffs' international treaty claims.

**Conclusion**

Defendants' arguments to dismiss the complaint in its entirety are well taken.  As Defendants point out, Plaintiffs' allegations, even if taken as true, are devoid of a factual basis to state a claim upon which relief may be granted.  Eleventh Amendment immunity protects the Defendants from all of Plaintiffs' claims for monetary relief against them in their official capacities.  Although this Eleventh Amendment immunity does not extend to claims for equitable relief against Defendants, the Plaintiffs fail to allege sufficient facts to state a claim upon which equitable relief may be granted.  Qualified immunity protects Defendants from all of Plaintiffs' claims against Defendants in their individual capacities for violations of constitutional and federal statutory rights.  Florida statutory sovereign immunity protects Defendants against Plaintiffs' claims against them in their individual capacities for violations of state tort law.  The Plaintiffs have failed to allege facts sufficient to establish a RICO claim.  And, finally, the Plaintiffs do not have standing to sue under any of the international treaties which they allege were violated by Defendants.

---

[13] However, the undersigned does note that the Plaintiffs' claim of genocide here, as in *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161 (5th Cir. 1999), "suffers from the same pleading defects that plagued [their] other claims and... is saturated with conclusory allegations devoid of any underlying facts to support [their] claim of genocide.  Although the pleading requirements under Rule 8 are to be liberally construed in favor of the plaintiff, nevertheless, the rule requires more than "bare bone allegations." *Id.* at 168 (citing *Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990)).

16

The Court finds Plaintiffs' amended complaint fails to state any claim upon which relief can be granted as to Defendants Tucker, Giglia, Bennett, Parker, Doe, and Doe and therefore **recommends the motion to dismiss, Doc. #19, be granted to the extent:**

1. That all claims for violations of international law against Defendants, in their official and individual capacities, be **DISMISSED** *with prejudice*.

2. That all other claims against Defendants, in their official and individual capacities, be **DISMISSED** *without prejudice*.

**DONE AND ENTERED** at Jacksonville, Florida this  27th  day of July, 2005.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies:
All Counsel of Record
Pro Se Parties